**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
SuperCom Inc.,

                                   *Plaintiff*,

       - *against* -

911inet LLC, and John Doe Corporations 1-5 d/b/a
Specialty Location Services,

                                *Defendants*.
----------------------------------------------------------------X

Case No.: 20-cv-08228

Hon. Jed. S. Rakoff


# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**LEVIN-EPSTEIN & ASSOCIATES, P.C.**
Joshua Levin-Epstein, Esq.
Jason Mizrahi, Esq.
60 East 42nd Street, Suite 4700
New York, NY 10165
Tel. No.: (212) 792-0048
Email: Jason@levinepstein.com
*Attorneys for Plaintiff*

Dated: New York, New York
        September 2, 2021

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ............................................................................................................. ii

**PRELIMINARY STATEMENT** ..................................................................................................... 1

**UNDISPUTED STATEMENT OF FACTS** ................................................................................... 3

    A.   The Contract ............................................................................................................ 3

    B.   Defendants are Alter Egos ....................................................................................... 7

**LEGAL STANDARD** ..................................................................................................................... 8

**ARGUMENT** .................................................................................................................................... 9

  I.   Plaintiff's Evidence Unequivocally Establishes Defendants' Breach ................................ 9

    A.   The Parties Entered into an Enforceable Contract ................................................. 9

    B.   Plaintiff Fully Performed Under the Contract ...................................................... 10

    C.   Plaintiff has been Damaged as a Result of Defendants' Breach .......................... 10

    D.   Plaintiff is Entitled to Pre-Judgment Interest ....................................................... 11

  II.  Plaintiff's Evidence Unequivocally Establishes Plaintiff's Account Stated Claim .......... 11

  III.  Plaintiff's Evidence Unequivocally Establishes Plaintiff's Conversion Claim ................ 12

  IV.  Plaintiff's Evidence Unequivocally Establishes Plaintiff's Quasi-Contract Claims ........ 13

  V.   Defendants are Alter Egos ................................................................................................. 13

**CONCLUSION** .............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*AGCS Mar. Ins. Co. v World Fuel Services, Inc.*,
    220 F.Supp 3d 431 (S.D.N.Y. 2016).................................................................................. 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................................. 8

*Brady v. Town of Colchester*,
    863 F.2d 205, 211 (2d Cir. 1988)........................................................................................ 8

*Castaldi v. River Ave. Contracting Corp.*,
    2015 WL 3929691 (S.D.N.Y. 2015)................................................................................. 13

*DeMartino v. Abrams et al.*,
    189 A.D.3d 774 (2d. Dept. 2020) ..................................................................................... 12

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005)................................................................................................ 8

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................................. 8

*Paul, Weiss, Rifkind, Wharton & Garrison v. Koons*,
    4 Misc. 3d 447 (Sup. Ct., N.Y. Co. 2004) .................................................................. 11, 12

*Salatino v. Salatino*,
    64 A.D.3d 923 (3d Dept. 2009) ........................................................................................ 12

*Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*,
    2019 WL 6498397 (S.D.N.Y. 2019)................................................................................. 13

*Terwilliger v. Terwilliger*,
    206 F3d 240 (2d Cir. 2000)................................................................................................ 9

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*,
    735 F. Supp. 2d 42 (S.D.N.Y. 2010).................................................................................. 8

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004)................................................................................................ 8

**Statutes**

CPLR § 5001(b)............................................................................................................................ 11

CPLR § 5004 .................................................................................................................. 11

Fed.R.Civ.P.56(c) ........................................................................................................... 8

Fed.R.Civ.P. 56(e) .......................................................................................................... 8

Defendant Plaintiff SuperCom Inc. (the "Plaintiff"), by and through the undersigned counsel, respectfully submits this Memorandum of Law, together with the affidavit of Jason Gilbert (the "Gilbert Aff."), the exhibits annexed thereto, the declaration of Jason Mizrahi, Esq. (the "Mizrahi Decl."), the exhibits annexed thereto, and Plaintiff's Local Rule 56.1 Statement (the "56.1 Statement") in support of Plaintiff's motion for summary judgment (the "Motion for Summary Judgment") against Defendants 911inet LLC and John Doe Corporations 1-5 d/b/a Specialty Location Services (together, the "Defendants"), and as grounds thereto respectfully states as follows:

## PRELIMINARY STATEMENT

This is a straightforward breach of contract action against two separate defendants; *to wit* 911inet LLC and Specialty Location Services. On October 2, 2020, Plaintiff, a leader in providing integrated solutions for tracking and identification and electronic monitoring of individuals, commenced this action arising out of Defendants' breach of that certain reseller agreement made by and between Plaintiff and defendant Specialty Location Services dated June 4, 2019 (the "Contract"). Plaintiff has additionally sued 911inet LLC because Defendants' principal, Javier Garcia, failed to operate Defendants as entities legally separate and apart from one another.

Pursuant to the Contract, Plaintiff agreed to lease Defendant Specialty Location Services certain electronic monitoring hardware and software for electronic monitoring used in pretrial supervision and assessment, condition of bail, condition of sentence, intensive probation and parole supervision, among other sentencing options and uses. Defendants simply never paid on account of certain invoices, as detailed below.

The Complaint alleges five (5) causes of action: (i) Breach of Contract; (ii) Account Stated; (iii) Conversion; (iv) Alternative Claims for Relief - Quantum Meruit; and (v) Alternative Claims for Relief – Unjust Enrichment.

Plaintiff's first cause of action for breach of contract is straightforward. Pursuant to the Contract, Defendants agreed to lease certain equipment from Plaintiff, consisting of: PureTag Bracelets; PureTrack Smartphones; PureCom Base Stations; Beacons; PureTrack Smartphone Chargers; and PureCom Base Station Chargers (collectively, the "SuperCom Equipment"). Pursuant to the Contract, Defendants agreed to lease the SuperCom Equipment at an "activated" and "non-activated" daily rate. Defendants have failed to pay $209,467.80 in leasing "activated" SuperCom Equipment, and $38,332.58 in leasing "non-activated" SuperCom Equipment, for a combined outstanding total amount of $247,800.38. In addition, Defendants have failed to return the SuperCom Equipment to Plaintiff, the replacement costs of which equal $48,650. As such, Defendants have failed to pay Plaintiff, in violation of the Contract.

Plaintiff's second cause of action for account stated is also straightforward. Plaintiff presented Defendants with multiple invoices and demand letters seeking payment for those products and services. The invoices and demand letters were presented to Defendants on or around November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606),  July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724). Defendants never objected to any of the above-referenced invoices or demand letters.

Plaintiff's third cause of action for conversion arises out of Defendants' failure to return the SuperCom Equipment.

The fourth and fifth causes of action are alternative claims for relief sounding in *quantum meruit* and unjust enrichment. To the extent that Plaintiff has not adequately pled a breach of contract claim, out of an abundance of caution, Plaintiff has pled alternative claims for relief.

Defendants have not – and cannot – set forth any meritorious objections to the Complaint.

## UNDISPUTED STATEMENT OF FACTS

**A. The Contract**

On or around June 4, 2019, Plaintiff and Specialty Location Services entered into that certain reseller agreement (the "Contract"). [*See* 56.1 Statement at ¶ 1]. Specialty Location Services entered into the Contract with Plaintiff to induce Plaintiff to, *inter alia*, lease certain electronic monitoring hardware and software. [*Id*. at ¶ 2]. By the terms of the Contract, Defendants agreed to lease certain equipment from Plaintiff, consisting of:

  a. PureTag Bracelets;

  b. PureTrack Smartphones;

  c. PureCom Base Stations;

  d. Beacons;

  e. PureTrack Smartphone Chargers; and

  f. PureCom Base Station Chargers (*i.e.,* the SuperCom Equipment).

[*Id*. at ¶ 3]. Appendix "B" of the Contract contains a table listing the associated price to lease each piece of "activated" equipment that Plaintiff leased from SuperCom. A true and correct reproduction of this table is included below:

| Product | Components | Volume Tiers | Activated Price |
|---|---|---|---|
| PureTrack Set<br>GPS Device | *1 PureTrack smartphone with PureTrack Application and charger<br>* PureTag Bracelet | 1 - 100<br>101 - 200<br>201+ | $3.25/day/set<br>$3.15/day/set<br>$3.00/day/set |
| PureCom Set<br>Radio Frequency House Arrest Soluton - Cellular | *1 PureCom base station with charger<br>*1 PureTag bracelet | 1- 25<br>26- 100<br>101+ | $2.70/day/set<br>$2.50/day/set<br>$2.30/day/set |
| PureBeacon<br>GPS accesory device | *1 PureBeacon | 1+ | $.50/day |
| Straps and clips | *12 straps and clips are included per year for each PureCom and PureTrack set | 1+ | $1<br>Additional strap and clip sets are $1 - over the alloted 12 per year. |

[*Id*. at ¶ 4].

The total cost of the "activated" SuperCom Equipment is $209,467.80 (the "Activated Rate"). [*Id*. at ¶ 5]. Paragraph 2 of Appendix "B" of the Contract entitled "Shelf" lists the costs to lease each piece of "non-activated" equipment that Plaintiff leased from SuperCom, at the following rates: 85% of all "non-activated" equipment will incur a charge equal to one-half (½) of the Activated Rate. [*Id*. at ¶ 6]. The total cost of the "non-activated" SuperCom Equipment is $38,332.58 (the "Non-Activated Rate"). [*Id*. at ¶ 7].

Paragraph 4 of Appendix "B" of the Contract entitled "Replacement Costs" lists the costs of replacing lost or damaged equipment that Plaintiff leased from SuperCom. The replacement cost of each piece of equipment Defendants leased from Plaintiffs is as follows:

a. PureTag Bracelets: $100

b. PureTrack Smartphones: $350

c. PureCom Base Stations: $500

d. Beacons: $50

e. PureTrack Smartphone Chargers: $25

f. PureCom Base Station Chargers: $25.

[*Id*. at ¶ 8] Plaintiff is the rightful owner of the Supercom Equipment. [*Id*. at ¶ 9]. Defendants have

4

failed to return the SuperCom Equipment. [*Id.* at ¶ 10]. The total replacement cost of the SuperCom Equipment is $48,650. [*Id.* at ¶ 11]. A breakdown of all of the costs due and owing to Plaintiff, *i.e.,* the Activated Rate and the Non-Activated Rate, and the total replacement cost of the SuperCom Equipment, is as follows:

| Invoice # | Month | Year | Active | Non-Active | Total Billed Amount | Running Total: Due |
|---|---|---|---|---|---|---|
| 1521 | November | 2019 | $18,025.56 | $1,422.14 | $19,447.70 | $7,447.70 |
| 1540 | December | 2019 | $20,395.48 | $1,701.17 | $22,096.65 | $29,544.35 |
| 1543 | January | 2020 | $20,891.36 | $1,243.93 | $22,135.29 | $51,679.64 |
| 1563 | February | 2020 | $16,905.00 | $2,415.01 | $19,320.01 | $70,999.65 |
| 1567 | March | 2020 | $17,420.20 | $2,646.24 | $20,066.44 | $91,066.09 |
| 1589 | April | 2020 | $17,236.66 | $2,323.74 | $19,560.40 | $110,626.49 |
| 1593 | May | 2020 | $17,835.58 | $2,383.81 | $20,219.39 | $130,845.88 |
| 1606 | June | 2020 | $16,019.50 | $2,975.79 | $18,995.29 | $149,841.17 |
| 1619 | July | 2020 | $16,061.36 | $3,076.11 | $19,137.47 | $168,978.64 |
| 1645 | August | 2020 | $15,610.56 | $3,317.61 | $18,928.17 | $187,906.81 |
| 1655 | September | 2020 | $7,647.50 | $2,718.19 | $10,365.69 | $198,272.50 |
| 1663 | October | 2020 | $7,203.14 | $2,995.61 | $10,198.75 | $208,471.25 |
| 1681 | November | 2020 | $6,665.40 | $3,057.90 | $9,723.30 | $218,194.55 |
| 1705 | December | 2020 | $7,766.04 | $2,489.12 | $10,255.16 | $228,449.71 |
| 1714 | January | 2021 | $7,686.14 | $2,982.73 | $10,668.87 | $239,118.58 |
| 1724 | February | 2021 | $6,676.18 | $2,005.62 | $8,681.80 | $247,800.38 |

| | |
|---|---|
| PureTracks Not Returned | 117 |
| PureTracks Returned Damaged | 22 |
| Total Device | 139 |
| Price for loss damage | $350.00 |
| Total Device Cost | $48,650.00 |

[*Id.* at ¶ 12].

Pursuant to the terms of the Contract, Plaintiff was and is entitled to payment of, *inter alia*, $296,450.38 for products and services provided thereunder. [*Id.* at ¶ 13]. Plaintiff performed all of its obligations under the Contract. [*Id.* at ¶ 14]. Defendants accepted and benefited from the products and services Plaintiff rendered to Defendants. [*Id.* at ¶ 15]. Plaintiff presented Defendants

5

with multiple invoices and demand letters seeking payment for those services in the amount of $247,800.38 (*i.e.,* the cost to lease the "activated" and "non-activated" Supercom Equipment). [*Id.* at ¶ 26].

The invoices and demand letters were presented to Defendants on or around November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606), July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724). [*Id.* at ¶ 17]. Defendants received the invoices and demand letters. [*Id.* at ¶ 18].

Defendants did not object to the amount stated as owing on the invoices and demand letters dated November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606), July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724). [*Id.* at ¶

19]. Defendants have failed to pay Plaintiff the partial past-due amount of $296,450.38. [*Id*. at ¶ 20].

### B. Defendants are Alter Egos

Defendant John Doe Corporations 1-5 d/b/a Specialty Location Services and Defendant 911inet LLC are alter egos, directly owned and operated by Javier Garcia. [*Id*. at ¶ 21]. According to the publicly available Alabama Secretary of State, Business Entity Record search results for "911inet LLC": (i) Defendant 911inet LLC maintains a principal office at 1308 Crawford Road, Phenix, AL 36867; and (ii) Defendant 911inet LLC's registered agent is Javier Garcia. [*Id*. at ¶ 22]. This information is consistent with 911inet LLC's business licenses. [*Id*. at ¶ 23]. This information is consistent with Defendant 911inet LLC's publicly available Electronic Articles of Organization. [*Id*. at ¶ 24]. Defendants' principal, Javier Garcia, failed to operate Defendants as entities legally separate and apart from one another. [*Id*. at ¶ 25]. According to Defendants' invoices, Facebook posts, and Supercom profile: (i) Defendants' principal, Javier Garcia, refers to each corporate Defendant interchangeably; (ii) Defendants' share the same business address at 1308 Crawford Road, Phenix, AL 36867; and (iii) Defendants' principal, Javier Garcia conducts business using @911inet.com and @slsgps.com email addresses. [*Id*. at ¶ 26]. According to Javier Garcia's 2018 federal income tax returns, ostensibly filed on February 12, 2019, Javier Garcia only claims to own an interest in one (1) corporate entity – 911inet LLC. [*Id*. at ¶ 27].In response to Interrogatory No. 13 of Plaintiff's First Set of Interrogatories, which requested that Defendants, "[i]dentify each officer and director of Corporate Defendants, including stating their title and function, and the time period for which they held each position", Defendants responded: "Javier Garcia, CEO Specialized Location Services, 2010 to March, 2019." [*Id*. at ¶ 28].

## **LEGAL STANDARD**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, there is no genuine issue as to any material fact when no reasonable jury could return a verdict for the nonmoving party. *See id.*; *accord Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant has the burden of demonstrating that no genuine issue of material fact exists. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

In order to survive a motion for summary judgment, "the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). To that end, the nonmoving party "may not rest upon the mere allegations or denials" in its pleadings; rather, it "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant must support the existence of an alleged dispute with specific citation to the record materials. *See* Fed. R. Civ. P. 56(c). Moreover, the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988).

The existence of and legal enforceability of a contract presents an issue of law properly determined on a motion for summary judgment. *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York,* 735 F. Supp. 2d 42, 52 (S.D.N.Y. 2010). Here, the pleadings, documentary evidence, and affidavits submitted hereto clearly establish that Plaintiff has satisfied its burden in

showing that there exist no triable issues of fact precluding summary judgment, and that there are no good faith defenses to Plaintiff's claims.

## ARGUMENT

I. **Plaintiff's Evidence Unequivocally Establishes Defendants' Breach**

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Terwilliger v. Terwilliger*, 206 F3d 240, 245-46 (2d Cir. 2000) (internal citations omitted). Here, all of the available evidence shows that the Parties entered into a contact for the lease of lease certain electronic monitoring hardware and software. As the record demonstrates, Plaintiff performed all of its obligations under the Contract, while Defendants have failed to pay Plaintiff $247,800.38 in equipment leases over sixteen (16) months, and have failed to replace $48,650 worth of monitoring equipment.

A. **The Parties Entered into an Enforceable Contract**

On or about June 4, 2019, Plaintiff and Specialty Location Services entered into the Contract, in which Plaintiff agreed to lease certain electronic monitoring hardware and software, exchange for payment from Defendant. [*See* 56.1 Statement at ¶¶ 1-3].

Appendix "B" of the Contract contains a table listing the associated price to lease each piece of "activated" equipment that Plaintiff leased from SuperCom, as follows:

| Product | Components | Volume Tiers | Activated Price |
|---|---|---|---|
| PureTrack Set<br>GPS Device | *1 PureTrack smartphone with PureTrack Application and charger<br>* PureTag Bracelet | 1 - 100 | $3.25/day/set |
| | | 101 - 200 | $3.15/day/set |
| | | 201+ | $3.00/day/set |
| PureCom Set<br>Radio Frequency House Arrest Soluton - Cellular | *1 PureCom base station with charger<br>*1 PureTag bracelet | 1- 25 | $2.70/day/set |
| | | 26- 100 | $2.50/day/set |
| | | 101+ | $2.30/day/set |
| PureBeacon<br>GPS accesory device | *1 PureBeacon | 1+ | $.50/day |
| Straps and clips | *12 straps and clips are included per year for each PureCom and PureTrack set | 1+ | $1<br>Additional strap and clip sets are $1 - over the alloted 12 per year. |

9

[*Id*. at ¶ 4]. Paragraph 2 of Appendix "B" of the Contract entitled "Shelf" lists the costs to lease each piece of "non-activated" equipment that Plaintiff leased from SuperCom, as follows: 85% of all "non-activated" equipment will incur a charge equal to one-half (½) of the Activated Rate. [*Id*. at ¶ 6]. Paragraph 4 of Appendix "B" of the Contract entitled "Replacement Costs" lists the costs of replacing lost or damaged equipment that Plaintiff leased from SuperCom. [*Id*. at ¶ 8]. The replacement cost of each piece of equipment Defendants leased from Plaintiffs is as follows:

   a. PureTag Bracelets: $100

   b. PureTrack Smartphones: $350

   c. PureCom Base Stations: $500

   d. Beacons: $50

   e. PureTrack Smartphone Chargers: $25

   f. PureCom Base Station Chargers: $25.

[*Id*.].

### B. Plaintiff Fully Performed Under the Contract

Plaintiff provided Defendants with all of the agreed-upon electronic monitoring hardware and software, which Defendants accepted and benefitted from. [*Id*. at ¶¶ 14-15]. Plaintiff performed all of its obligations under the Contract. [*Id*. at ¶ 14].

### C. Plaintiff has been Damaged as a Result of Defendants' Breach

Pursuant to the terms of the Contract, Plaintiff was and is entitled to payment of, *inter alia*, $296,450.38 for products and services provided thereunder. [*Id*. at ¶ 13]. Despite multiple demands, spanning multiple months, Defendants have failed to pay Plaintiff the partial past-due amount of $296,450.38. [*Id*. at ¶ 20].

### D. Plaintiff is Entitled to Pre-Judgment Interest

CPLR § 5001(a) states that "[i]nterest shall be recovered upon a sum awarded because of a breach of contract." (emphasis added). The interest "shall be computed from the earliest ascertainable date the cause of action existed...." CPLR § 5001(b) (emphasis added). The rate of interest "shall be at the rate of nine percent per annum." CPLR § 5004 (emphasis added). As the plain language of the statute reads, pre-judg-ent interest is not discretionary, rather, under New York law a prevailing plaintiff "in a breach of contract disputc is entitled to prejudgment interest to be computed from the earliest ascertsinable date the cause of action existed." *AGCS Mar. Ins. Co. v World Fuel Services, Inc*., 220 F.Supp 3d 431, 442-443 (S.D.N.Y. 2016) (internal citations omitted).

Here, Plaintiff's cause of action accrued at least as early as November 30, 2019, when Defendants first breached their contractual obligation to pay Plaintiff under the Contract. [56.1 Statement at ¶ 19]. Therefore, Plaintiff is entitled to an award of interest at the rate of nine percent (9%) per annum upon the sum awarded from November 30, 2019, through the date such award is entered.

### II. Plaintiff's Evidence Unequivocally Establishes Plaintiff's Account Stated Claim

"An account stated is an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and that balance due, if any in favor of one party or the other." *Paul, Weiss, Rifkind, Wharton & Garrison v. Koons*, 4 Misc. 3d 447, 450 (Sup. Ct., N.Y. Co. 2004). "In order to establish an account stated, there must be a debtor and creditor relationship between the parties as to the items forming the account." *Id.* An implicit agreement to pay, warranting summary judgment, will arise from either the absence of any objection to a bill within a reasonable time or

a partial payment of the outstanding bills. *Id.* *(citing Chisholm-Ryder Co., Inc. v. Sommer & Sommer*, 70 A.D.2d 430 (4th Dept 1979).

Here, Defendants did not object to the amount stated as owing on the invoices and demand letters dated November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606),  July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724). . [56.1 Statement at ¶ 19]. Accordingly, it is clear that Plaintiff is entitled to prevail on its claim for Account Stated.

### III.     Plaintiff's Evidence Unequivocally Establishes Plaintiff's Conversion Claim

Conversion is the wrongful "exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Salatino v. Salatino,* 64 A.D.3d 923 (3d Dept. 2009) (internal citation omitted). "To state a cause of action to recover damages for conversion, a plaintiff must allege: (i) legal ownership or an immediate right of possession; (ii) to specifically identifiable funds; and that (iii) the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiffs rights." *DeMartino v. Abrams et al.*, 189 A.D.3d 774, 776 (2d. Dept. 2020).

In the present case, it is undisputed that Plaintiff is the rightful owner of the SuperCom Equipment, which Defendants have failed to return to-date. [56.1 Statement at ¶¶ 9-10]. By reason of the foregoing, Plaintiff is entitled to prevail on its conversion claim.

### IV. Plaintiff's Evidence Unequivocally Establishes Plaintiff's Quasi-Contract Claims

Under New York law, courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim," because unjust enrichment is simply an element of the former claim *Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*, 2019 WL 6498397, at *4 (S.D.N.Y. 2019), *reconsideration denied*, 2020 WL 364567 (S.D.N.Y. 2020). "The basic elements of an unjust enrichment claim in New York require proof that (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) equity and good conscience militate permitting the defendant to retain what the plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoeniz Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004) (citation omitted). Unjust enrichment is implicated because "the defendant took money or obtained a benefit that in equity and good conscience it should not have taken or obtained because it rightfully belonged to another." *Mente v. Wenzel*, 178 A.D.2d 705, 706 (3d Dept. 1991).

As set forth in §§ I-III, *supra,* the evidence demonstrates the merits of Plaintiff's unjust enrichment and quantum meruit claims

### V. Defendants are Alter Egos

The "hallmarks of the alter ego doctrine include 'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" *Castaldi v. River Ave. Contracting Corp.*, 2015 WL 3929691, at *3 (S.D.N.Y. 2015) (citing *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 748 (2d Cir.1996)) (citation omitted). For example, summary judgment of alter ego status is appropriate where the undisputed facts show that two entities have "identical management, supervision, and ownership," "engage in substantially the same type of work," "lease [ ] identical office space ... and use[ ] many of the same business institutions," and one company "actually took over contracts originally awarded" to the other. *Castaldi,* 2015 WL 3929691 at *3 (citing *Bricklayers & Allied Craftworkers Local 2 v.*

*C.G. Yantch, Inc.*, 316 F.Supp.2d 130, 144 (N.D.N.Y.2003); *Plumbers, Pipefitters & Apprentices Local Union No. 112 Pension, et al v. Mauro's Plumbing, Heating & Fire Suppression, Inc.*, 84 F.Supp.2d 344, 351 (N.D.N.Y.2000) (granting summary judgment of alter ego status); *Bourgal v. Robco Contracting Enterprises, Ltd.*, 969 F.Supp. 854, 863 (E.D.N.Y.1997) *aff'd*, 182 F.3d 898 (2d Cir.1999) (same).

In support of the instant Motion for Summary Judgment, Plaintiff has submitted overwhelming and uncontroverted evidence that 911inet LLC and Specialty Location Services operated during the relevant period as alter egos.

First, both entities operated under identical management – Javier Garcia. There is no dispute that Javier Garcia owned and controlled both 911inet LLC and Specialty Location Services. In response to Interrogatory No. 13 of Plaintiff's First Set of Interrogatories, which requested that Defendants, "[i]dentify each officer and director of Corporate Defendants, including stating their title and function, and the time period for which they held each position", Defendants responded: "Javier Garcia, CEO Specialized Location Services, 2010 to March, 2019." [56.1 Statement at ¶ 28]. According to Javier Garcia's 2018 federal income tax returns, ostensibly filed on February 12, 2019, Javier Garcia only claims to own an interest in one (1) corporate entity – 911inet LLC. [*Id*. at ¶ 27]. According to the publicly available Alabama Secretary of State, Business Entity Record search results for "911inet LLC": (i) Defendant 911inet LLC maintains a principal office at 1308 Crawford Road, Phenix, AL 36867; and (ii) Defendant 911inet LLC's registered agent is Javier Garcia. [*Id*. at ¶ 22]. This information is consistent with 911inet LLC's business licenses. [*Id*. at ¶ 23]. This information is consistent with Defendant 911inet LLC's publicly available Electronic Articles of Organization. [*Id*. at ¶ 24].

Second, both entities ostensibly provide security and electronic monitoring services. According to Defendants' invoices, Facebook posts, and Supercom profile: (i) Defendants' principal, Javier Garcia, refers to each corporate Defendant interchangeably; (ii) Defendants' share the same business address at 1308 Crawford Road, Phenix, AL 36867; and (iii) Defendants' principal, Javier Garcia conducts business using @911inet.com and @slsgps.com email addresses. [*Id*. at ¶ 26]. These same facts demonstrate that in providing these services, Javier Garcia failed to treat 911inet LLC and Specialty Location Services as separate entities. [*Id*.].

Thus, the instant case represents a classic example of alter ego liability.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that Plaintiff's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 should be granted, in addition to any such other or further relief as the Court might deem proper or just.

Dated: New York, New York
September 2, 2021

          By:    */s/ Jason Mizrahi*
                Levin-Epstein & Associates, P.C.
                Joshua D. Levin-Epstein
                Jason Mizrahi, Esq.
                60 East 42nd Street, Suite 4700
                New York, NY 10165
                Tel. No.: (212) 792-0048
                Email: Jason@levinepstein.com
                *Attorneys for Plaintiff*

Cc:    All parties via ECF