UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Supercom Inc.,

                           *Plaintiff*,

           - *against* -

911inet LLC, John Doe Corporations 1-5 d/b/a Specialty Location Services d/b/a Specialized Location Services, and Javier Garcia,

                           *Defendants*.
----------------------------------------------------------------X

Case No.: 20-cv-08228

Hon. Jed S. Rakoff

**Jury Trial Demanded**

**FIRST AMENDED COMPLAINT**

      Plaintiff Supercom Inc. ("Plaintiff" or "Supercom"), by and through its attorneys, Levin-Epstein & Associates, P.C., brings this first amended complaint against defendants 911inet LLC ("911inet"), John Doe Corporations 1-5 d/b/a Specialty Location Services d/b/a Specialized Location Services ("Specialty Location Services", or the "John Doe Defendants," and together with 911inet, the "Corporate Defendants") and Javier Garcia, in his individual capacity ("Garcia," and together with the Corporate Defendants, the "Defendants") and states as follows:

**NATURE OF THE ACTION**

      1.     This is an action to hold Garcia and 911inet each liable for defrauding SuperCom into entering that certain reseller agreement dated June 4, 2019 (the "Contract") with a sham entity named on the Contract, Specialty Location Services, that effectively went bankrupt.[1]

      2.     The Contract specifically provided that Specialty Location Services was the "full legal name" of the entity that countersigned the Contract and that it was a "company duly organized and validly existing under the laws of Alabama". Neither representation/warranty is true. Specialty Location Services had never been incorporated at the time of the execution of the

---

[1] A true and correct copy of the Contract is annexed hereto as **Exhibit "A"**.

1

Contract. Consequently, Supercom was left to deal with a sham entity, that was never formed, and that had no money. This is a classic case where veil piercing and reverse veil piercing are warranted to hold fraudulent corporate and individual actors accountable.

3. SuperCom fulfilled its obligations under the Contract and Specialty Location Services has failed to pay the agreed amount due thereunder in the amount of no less than $296,450.38.

4. Pursuant to the Contract, SuperCom agreed to lease Specialty Location Services certain electronic monitoring hardware and software for electronic monitoring used in pretrial supervision and assessment, condition of bail, condition of sentence, intensive probation and parole supervision, among other sentencing options and uses. Defendants simply never paid on account of certain invoices, as detailed below.

5. The First Amended Complaint alleges ten (10) causes of action: (i) Breach of Contract; (ii) Account Stated; (iii) Conversion; (iv) Alternative Claims for Relief - Quantum Meruit; (v) Alternative Claims for Relief – Unjust Enrichment; (vi) fraud; (vii) fraudulent inducement; (viii) fraudulent misrepresentation; (ix) corporate veil piercing; and (x) reverse corporate veil piercing.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7. The Court also has subject matter jurisdiction of this case pursuant 28 U.S.C. § 1337.

8. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) and (c), because Plaintiff maintains its principal place of business in the Southern District of New York, and because the terms of the Contract confer this Court with *in personam* jurisdiction and states, in relevant part, as follows:

> "This Agreement shall be governed by the law of the State of New York, and the competence courts of New York, NY."

## THE PARTIES

**PLAINTIFF SUPERCOM INC.**

9. Plaintiff Supercom is a global provider of advanced safety, identification and security solutions to governments and organizations, both private and public, throughout the world. SuperCom contracts with governments and commercial customers to provide, *inter alia*, electronic monitoring, identification and security products.

10. Supercom was and is a domestic corporation organized and existing under the laws of the State of New York.

**DEFENDANT 911INET LLC**

11. Upon information and belief, 911inet was and is a domestic corporation organized and existing under the laws of the State of Alabama, with a principal place of business at 1803 Crawford Road, Phenix City, Alabama, 36867.

**DEFENDANT JOHN DOE CORPORATIONS 1-5 D/B/A SPECIALTY LOCATION SERVICES D/B/A SPECIALIZED LOCATION SERVICES**

12. The John Doe Defendants are entities or persons not presently known to Plaintiff but who were organized for the purpose of operating or assisting with the operation of 911inet and/or Garcia, in his individual capacity.

13. The true names of the John Doe Defendants are unknown to Plaintiff at this time,

and Plaintiff will seek leave to amend this First Amended Complaint to state their true names when they have been ascertained.

14. Specialty Location Services is a fictitious name of the unknown named entity through which Garcia and 911inet conducted business.

**DEFENDANT JAVIER GARCIA**

15. Upon information and belief, Garcia is an individual who resides at 6198 Candlestick Loop, Columbus, Georgia 31909.

16. Upon information and belief, John Doe Corporations 1-5 d/b/a Specialty Location Services and 911inet are alter egos, directly owned and operated by Garcia. According to the publicly available Alabama Secretary of State, Business Entity Record search results for "911inet LLC": (i) 911inet maintains a principal office at 1308 Crawford Road, Phenix, AL 36867; and (ii) 911inet's registered agent is Javier Garcia. Upon information and belief, this information is consistent with 911inet's business licenses. Upon information and belief, this information is consistent with 911inet's publicly available Electronic Articles of Organization.

17. Upon information and belief, Corporate Defendants' principal, Garcia, failed to operate the Corporate Defendants as entities legally separate and apart from one another.

18. According to Corporate Defendants' invoices, Facebook posts, and profile: (i) Corporate Defendants' principal, Garcia, refers to each Corporate Defendant interchangeably; (ii) Corporate Defendants' share the same business address at 1308 Crawford Road, Phenix, AL 36867; and (iii) Corporate Defendants' principal, Garcia, conducts business using @911inet.com and @slsgps.com email addresses.

19. According to Garcia's personal 2018 federal income tax returns, ostensibly filed on February 12, 2019, Garcia only claims to own an interest in one (1) corporate entity –

911inet.

20. In response to Interrogatory No. 13 of Plaintiff's First Set of Interrogatories, which requested that Defendants, "[i]dentify each officer and director of Corporate Defendants, including stating their title and function, and the time period for which they held each position", Defendants responded: "Javier Garcia, CEO Specialized Location Services, 2010 to March, 2019."

21. Upon information and belief, at all relevant times, Specialty Location Services was undercapitalized.

22. Upon information and belief, at all relevant times, Specialty Location Services was a sham entity controlled and dominated by Garcia.

**CORPORATE DEFENDANTS ARE OPERATING AS ALTER EGOS OF EACH OTHER, AND GARCIA INDIVIDUALLY**

23. Corporate Defendants' principal, Garcia, possesses operational control over the Corporate Defendants, possesses an ownership interest in Corporate Defendants, and controls significant functions of Corporate Defendants.

24. Upon information and belief, Corporate Defendants' principal, Garcia, fails to operate Corporate Defendants as entities legally separate and apart from one another, by, among other things:

　　a.　failing to adhere to the corporate formalities necessary to operate Corporate Defendants as separate and legally distinct entities;

　　b.　defectively forming or maintaining Corporate Defendants, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

　　c.　transferring assets and debts freely as between all Corporate Defendants;

　　d.　operating Corporate Defendants for his own benefit as the majority member;

e. operating Corporate Defendants for his own benefit and maintaining control over it as a closed company or closely controlled entity;

f. intermingling assets and debts of his own with Corporate Defendants;

g. diminishing and/or transferring assets of Corporate Defendants to protect his own interests; and

h. other actions evincing a failure to adhere to the corporate form.

25. Specialty Location Services never formally existed as an incorporated or registered entity of any kind.

## ADDITIONAL FACTUAL ALLEGATIONS

26. On or around June 4, 2019, SuperCom and Specialty Location Services entered into the Contract.

27. Pursuant to the Contract, Specialty Location Services agreed to lease certain equipment from Plaintiff, consisting of: PureTag Bracelets; PureTrack Smartphones; PureCom Base Stations; Beacons; PureTrack Smartphone Chargers; and PureCom Base Station Chargers (collectively, the "SuperCom Equipment").

28. Pursuant to the Contract, Specialty Location Services agreed to lease the SuperCom Equipment at an "activated" and "non-activated" daily rate. Specialty Location Services has failed to pay $209,467.80 in leasing "activated" SuperCom Equipment, and $38,332.58 in leasing "non-activated" SuperCom Equipment, for a combined outstanding total amount of $247,800.38.

29. In addition, Specialty Location Services has failed to return the SuperCom Equipment to SuperCom, the replacement costs of which equal $48,650.

30. Pursuant to the terms of the Contract, SuperCom was and is entitled to payment

of and for products and services provided thereunder.

31. SuperCom performed all of its obligations under the Contract.

32. SuperCom presented Defendants with multiple invoices seeking payment for those services.

33. The invoices and demand letters were presented to Defendants on or around November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606), July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724).

34. Defendants never objected to any of the above-referenced invoices or demand letters.

35. Defendants have failed to pay SuperCom the past-due amount.

36. Defendants have failed to pay SuperCom any portion of the past-due amount.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

37. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

38. By the terms of the Contract, Specialty Location Services agreed to lease certain

7

equipment from Plaintiff, consisting of:

    a. PureTag Bracelets;

    b. PureTrack Smartphones;

    c. PureCom Base Stations;

    d. Beacons;

    e. PureTrack Smartphone Chargers; and

    f. PureCom Base Station Chargers (*i.e.,* the SuperCom Equipment).

39. Appendix "B" of the Contract contains a table listing the associated price to lease each piece of "activated" equipment that Specialty Location Services leased from SuperCom. A true and correct reproduction of this table is included below:

| Product | Components | Volume Tiers | Activated Price |
|---|---|---|---|
| **PureTrack Set** GPS Device | *1 PureTrack smartphone with PureTrack Application and charger * PureTag Bracelet | 1 - 100 | $3.25/day/set |
| | | 101 - 200 | $3.15/day/set |
| | | 201+ | $3.00/day/set |
| **PureCom Set** Radio Frequency House Arrest Soluton - Cellular | *1 PureCom base station with charger *1 PureTag bracelet | 1- 25 | $2.70/day/set |
| | | 26- 100 | $2.50/day/set |
| | | 101+ | $2.30/day/set |
| **PureBeacon** GPS accesory device | *1 PureBeacon | 1+ | $.50/day |
| **Straps and clips** | *12 straps and clips are included per year for each PureCom and PureTrack set | 1+ | $1 Additional strap and clip sets are $1 - over the alloted 12 per year. |

40. The total cost of the "activated" SuperCom Equipment is $209,467.80 (the "Activated Rate"). Paragraph 2 of Appendix "B" of the Contract entitled "Shelf" lists the costs to lease each piece of "non-activated" equipment that Specialty Location Services leased from SuperCom, at the following rates: 85% of all "non-activated" equipment will incur a charge equal to one-half (½) of the Activated Rate. The total cost of the "non-activated" SuperCom Equipment is $38,332.58 (the "Non-Activated Rate").

8

41.     Paragraph 4 of Appendix "B" of the Contract entitled "Replacement Costs" lists the costs of replacing lost or damaged equipment that Specialty Location Services leased from SuperCom. The replacement cost of each piece of equipment Specialty Location Services leased from SuperCom is as follows:

   a. PureTag Bracelets: $100

   b. PureTrack Smartphones: $350

   c. PureCom Base Stations: $500

   d. Beacons: $50

   e. PureTrack Smartphone Chargers: $25

   f. PureCom Base Station Chargers: $25

42.     Plaintiff is the rightful owner of the Supercom Equipment.

43.     Specialty Location Services has failed to return the SuperCom Equipment.

44.     The total replacement cost of the SuperCom Equipment is $48,650.

45.     A breakdown of all the costs due and owing to SuperCom, *i.e.*, the Activated Rate and the Non-Activated Rate, and the total replacement cost of the SuperCom Equipment, is as follows:

| Invoice # | Month | Year | Active | Non-Active | Total Billed Amount | Running Total: Due |
|---|---|---|---|---|---|---|
| 1521 | November | 2019 | $18,025.56 | $1,422.14 | $19,447.70 | $7,447.70 |
| 1540 | December | 2019 | $20,395.48 | $1,701.17 | $22,096.65 | $29,544.35 |
| 1543 | January | 2020 | $20,891.36 | $1,243.93 | $22,135.29 | $51,679.64 |
| 1563 | February | 2020 | $16,905.00 | $2,415.01 | $19,320.01 | $70,999.65 |
| 1567 | March | 2020 | $17,420.20 | $2,646.24 | $20,066.44 | $91,066.09 |
| 1589 | April | 2020 | $17,236.66 | $2,323.74 | $19,560.40 | $110,626.49 |
| 1593 | May | 2020 | $17,835.58 | $2,383.81 | $20,219.39 | $130,845.88 |
| 1606 | June | 2020 | $16,019.50 | $2,975.79 | $18,995.29 | $149,841.17 |
| 1619 | July | 2020 | $16,061.36 | $3,076.11 | $19,137.47 | $168,978.64 |
| 1645 | August | 2020 | $15,610.56 | $3,317.61 | $18,928.17 | $187,906.81 |
| 1655 | September | 2020 | $7,647.50 | $2,718.19 | $10,365.69 | $198,272.50 |
| 1663 | October | 2020 | $7,203.14 | $2,995.61 | $10,198.75 | $208,471.25 |
| 1681 | November | 2020 | $6,665.40 | $3,057.90 | $9,723.30 | $218,194.55 |
| 1705 | December | 2020 | $7,766.04 | $2,489.12 | $10,255.16 | $228,449.71 |
| 1714 | January | 2021 | $7,686.14 | $2,982.73 | $10,668.87 | $239,118.58 |
| 1724 | February | 2021 | $6,676.18 | $2,005.62 | $8,681.80 | $247,800.38 |

| | |
|---|---|
| PureTracks Not Returned | 117 |
| PureTracks Returned Damaged | 22 |
| Total Device | 139 |
| Price for loss damage | $350.00 |
| Total Device Cost | $48,650.00 |

46.     Pursuant to the terms of the Contract, SuperCom was and is entitled to payment of, *inter alia*, $296,450.38 for products and services provided thereunder.

47.     Plaintiff performed all of its obligations under the Contract.

48.     Specialty Location Services accepted and benefited from the products and services Plaintiff rendered to Specialty Location Services.

49.     Plaintiff presented Defendants with multiple invoices and demand letters seeking payment for those services in the amount of $247,800.38 (*i.e.*, the cost to lease the "activated" and "non-activated" Supercom Equipment).

50. Plaintiff and Specialty Location Services entered into a valid and binding contract.

51. Plaintiff performed any and all conditions precedent and obligations for which it is seeking payment under the Contract.

52. Specialty Locations Services is indebted to Plaintiff for services rendered under the Contract.

53. Although Plaintiff has demanded payment, Specialty Location Services has failed to pay.

54. Plaintiff has been damaged by Specialty Location Services' non-payment.

**SECOND CLAIM FOR RELIEF**
**(Account Stated)**

55. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

56. Plaintiff and Specialty Location Services entered into the Contract, pursuant to which Plaintiff provided certain products and services in exchange for payment from Specialty Location Services.

57. The invoices and demand letters were presented to Defendants on or around November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606), July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31,

2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724).

58. Defendants never objected to any of the above-referenced invoices or demand letters.

59. Defendants received the invoices and demand letters.

60. Defendants did not object to the amount stated as owing on the invoices and demand letters dated November 30, 2019 (Invoice No. 1521), December 31, 2019 (Invoice No. 1540), January 31, 2020 (Invoice No. 1543), February 28, 2020 (Invoice No. 1563), March 17, 2020 (March 17, 2020 demand letter), March 31, 2020 (Invoice No. 1567), April 20, 2020 (April 20, 2020 demand letter), April 30, 2020 (Invoice No. 1589), May 31, 2020 (Invoice No. 1593), June 30, 2020 (Invoice No. 1606),  July 24, 2020 (July 24, 2020 demand letter), July 31, 2020 (Invoice No. 1619), August 31, 2020 (Invoice No. 1645), September 30, 2020 (Invoice No. 1655), October 31, 2020 (Invoice No. 1663), November 30, 2020 (Invoice No. 1681), December 31, 2020 (Invoice No. 1705), January 31, 2020 (Invoice No. 1714), and February 28, 2020 (Invoice No. 1724).

61. Defendants have failed to pay Plaintiff the partial past-due amount of $296,450.38.

62. By failing to object to the account stated, Defendants accepted the account stated as correct and promised to pay the account stated.

63. By reason of the foregoing, Plaintiff is entitled to the balance due on the account stated in the amount not less than $296,450.38.

## THIRD CLAIM FOR RELIEF
### (Conversion)

64. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

65. By the terms of the Contract, Defendants agreed to lease certain equipment from Plaintiff, consisting of:

  a. PureTag Bracelets;

  b. PureTrack Smartphones;

  c. PureCom Base Stations;

  d. Beacons;

  e. PureTrack Smartphone Chargers;

  f. PureCom Base Station Chargers;

66. A true and correct list of all the equipment Defendants leased from Plaintiff is annexed hereto as **Exhibit "B"**.

67. Plaintiff is the rightful owner of the equipment, and is entitled to immediate possession thereof.

68. By their conduct, Specialty Location Services has violated the terms of the Contract, and Plaintiff's rights thereunder.

69. To date, Specialty Location Services has failed to return Plaintiff's equipment.

70. The failure and refusal of Specialty Location Services to return the equipment to Plaintiff constitutes a conversion of the equipment.

71. By reason of the foregoing, Plaintiff is entitled to judgment for the value of the equipment, in an amount to be determined.

## FOURTH CLAIM FOR RELIEF
### (Alternative Claim for Relief – *Quantum Meruit*)

72. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

73. As described more fully above, Defendants requested Plaintiff's services to, *inter alia*, provide, electronic monitoring, identification and security products.

74. Defendants accepted and benefited from the services Plaintiff rendered to Defendants.

75. The services rendered by Plaintiff had a fair and reasonable value.

76. Defendants failed to pay for the goods or services rendered.

77. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount to be determined.

## FIFTH CLAIM FOR RELIEF
### (Alternative Claim for Relief – Unjust Enrichment)

78. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

79. Plaintiff is entitled to be compensated for the products and services provided to Defendants.

80. Defendants accepted and benefited from the products and services Plaintiff rendered to Defendants.

81. Based upon the representations made by Defendants, Plaintiff reasonably expected to receive compensation for the services rendered to Defendants.

82. Defendants failed to compensate Plaintiff for such products and services.

83. Defendants have been unjustly enriched, to Plaintiff's detriment, by the benefits

conferred and services performed by Plaintiff for which it has not been compensated.

84. The conversion by Defendants of Plaintiff's equipment further unjustly enriches Defendants to the detriment of Plaintiff.

85. The circumstances are such that equity and good conscience require Defendants to make restitution to Plaintiff.

86. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants in an amount to be determined.

**SIXTH CLAIM FOR RELIEF**
**(Fraud – As Against Garcia)**

87. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

88. The Contract specifically provided that Specialty Location Services was the "full legal name" of the entity that countersigned the Contract and that it was a "company duly organized and validly existing under the laws of Alabama".

89. Neither representation/warranty is true.

90. Specialty Location Services had never been incorporated at the time of the execution of the Contract.

91. When Garcia made these representations and signed the Contract, he knew they were false because Specialty Location Services was not a "company duly organized and validly existing under the laws of Alabama".

92. In reasonable reliance on these representations, Plaintiff entered into the Contract.

93. SuperCom reasonably relied on the representations set forth above when entering into the Contract.

94. SuperCom was damaged as a result.

95. By reason of the foregoing, Plaintiff is entitled to judgment against Garcia.

**SEVENTH CLAIM FOR RELIEF**
**(Fraudulent Inducement– As Against Garcia)**

96. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

97. The Contract specifically provided that Specialty Location Services was the "full legal name" of the entity that countersigned the Contract and that it was a "company duly organized and validly existing under the laws of Alabama".

98. Neither representation/warranty is true.

99. Specialty Location Services had never been incorporated at the time of the execution of the Contract.

100. When Garcia made these representations and signed the Contract, he knew they were false because Specialty Location Services was not a "company duly organized and validly existing under the laws of Alabama".

101. In reasonable reliance on these representations, Plaintiff entered into the Contract.

102. The above-referenced misrepresentations were made for the purpose of inducing SuperCom to enter into the Contract.

103. SuperCom reasonably relied on the representations set forth above when entering into the Contract.

104. By reason of the foregoing, Plaintiff is entitled to judgment against Garcia.

16

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation – As Against Garcia)

105. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

106. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

107. The Contract specifically provided that Specialty Location Services was the "full legal name" of the entity that countersigned the Contract and that it was a "company duly organized and validly existing under the laws of Alabama".

108. Neither representation nor warranty is true. Specialty Location Services had never been incorporated at the time of the execution of the Contract.

109. When Garcia made these representations and signed the Contract, he knew they were false because Specialty Location Services was not a "company duly organized and validly existing under the laws of Alabama".

110. In reasonable reliance on these representations, Plaintiff entered into the Contract.

111. The above-referenced misrepresentations were made for the purpose of inducing SuperCom to enter into the Contract.

112. Supercom reasonably relied on the representations set forth above when entering into the Contract.

113. By reason of the foregoing, Plaintiff has been injured and damaged.

## **NINTH CLAIM FOR RELIEF**
### (Corporate Veil Piercing)

114.    Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

115.    The Defendants misused the corporate form through which Garcia conducted business as the means to perpetrate a fraud and commit other inequitable conduct which has caused harm to Plaintiff.

116.    Upon information and belief, Garcia and 911inet are (is) the equitable owner(s) of Specialty Location Services by virtue of his (their) dominion and control of the company's affairs and assets.  Garcia and/or 911inet has (have), and continue(s), to exercise considerable authority over the company to the point of completely disregarding the company form and acting as though the company's assets are Garcia or 911inet alone.

117.    Upon information and belief, Garcia and/or 911inet are (is) the equitable owner(s) of Specialty Location Services by virtue of his (their) dominion and control of the company's affairs and assets.  Garcia and/or 911inet has (have), and continue(s), to exercise considerable authority over the company to the point of completely disregarding the company form and acting as though the company's assets are Garcia's or 911inet's alone.

118.    Under the facts of the instant case, it is appropriate to treat Garcia as the equitable owner of the Corporate Defendants for veil-piercing purposes.  Garcia and the Corporate Defendants are the alter egos of each other.

119.    By reason of the foregoing, the corporate veil of the Corporate Defendants employed should be pierced and Garcia should be held personally liable for the monies owed to Plaintiff.

## TENTH CLAIM FOR RELIEF
### (Reverse Corporate Veil Piercing)

120. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

121. Under the facts of the instant case, it is appropriate to treat 911inet as the equitable owner of Specialty Location Services for veil-piercing purposes.

122. 911inet and Specialty Location Services are the alter egos of each other and, therefore, under the doctrine of reverse-piercing, they are to be treated as one and the same.

123. By reason of the foregoing, 911inet should be held to be the alter ago of the Specialty Location Services and held individually liable for the sums due to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, hereby demands judgment in its favor and against Defendants as follows:

(a) On the First Cause of Action, awarding damages to Plaintiff in an amount to be determined, plus interest as allowed by law;

(b) On the Second Cause of Action, awarding damages to Plaintiff in an amount to be determined, plus interest as allowed by law;

(c) On the Third Cause of Action, awarding damages to Plaintiff in the amount to be determined at trial, plus interest as allowed by law;

(d) On the Fourth Cause of Action, awarding damages to Plaintiff in the amount of an amount to be determined;

(e) On the Fifth Cause of Action, awarding damages to Plaintiff in the amount of an amount to be determined;

(f) On the Sixth Cause of Action, judgment against Garcia for fraud;

(g) On the Seventh Cause of Action, judgment against Garcia for fraudulent inducement;

  (h) On the Eighth Cause of Action, judgment against Garcia for fraudulent misrepresentation;

  (i) On the Ninth Cause of Action, judgment against Defendants by virtue of piercing the corporate veil;

  (j) On the Tenth Cause of Action, judgment against Defendants by virtue of reverse corporate veil piercing;

  (k) That the Court award SuperCom its attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest;

  (l) Plaintiff's cause of action accrued at least as early as November 30, 2019, when Defendants first breached their contractual obligation to pay Plaintiff under the Contract. Therefore, Plaintiff is entitled to an award of interest at the rate of nine percent (9%) per annum upon the sum awarded from November 30, 2019, through the date such award is entered;[2] and

  (m) Such other relief as this Court deems just and proper.

Dated: New York, New York
   February 14, 2022        Respectfully submitted,

                 By: /s/ Joshua Levin-Epstein
                   Joshua D. Levin-Epstein
                   Levin-Epstein & Associates, P.C.
                   60 East 42nd Street, Suite 4700
                   New York, NY 10165
                   Tel: (212) 792-0046
                   Email: Joshua@levinepstein.com
                   *Attorneys for Plaintiff*

---

[2] CPLR § 5001(a) states that "[i]nterest shall be recovered upon a sum awarded because of a breach of contract." (emphasis added). The interest "shall be computed from the earliest ascertainable date the cause of action existed...." CPLR § 5001(b) (emphasis added). The rate of interest "shall be at the rate of nine percent per annum." CPLR § 5004 (emphasis added). As the plain language of the statute reads, pre-judgment interest is not discretionary, rather, under New York law a prevailing plaintiff "in a breach of contract dispute is entitled to prejudgment interest to be computed from the earliest ascertainable date the cause of action existed." *AGCS Mar. Ins. Co. v World Fuel Services, Inc.*, 220 F.Supp 3d 431, 442-443 (S.D.N.Y. 2016) (internal citations omitted).