UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUPERCOM, INC.,

                              Plaintiff,

      -against-

911INET LLC, JOHN DOE CORPORATIONS 1-5,     Index No. 20-CV-8228
D/B/A SPECIALTY LOCATION SERVICES, AND     (JSR)
JAVIER GARCIA,

                             Defendants.
------------------------------------------------------------------X

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT AGAINST
DEFENDANT 911INET, LLC AND
DEFENDANT JAVIER GARCIA</u>**

## I. PRELIMINARY STATEMENT

Upon the Affidavit of Javier Garcia dated March 13, 2022, Defendant 911iNet, LLC (hereinafter "911iNet") and Defendant Javier Garcia (hereinafter "Garcia") move to dismiss this action against them under Rule 12(b)(6). As outlined herein, Plaintiff has failed to state a claim upon which relief may be granted relative to such Defendants.

Plaintiff's Amended Complaint largely focuses on the actions of Defendant Specialized Location Services (hereinafter "Specialized"). Specialized is filing its Answer to the Amended Complaint herewith. Specialized is the only Defendant with whom Plaintiff actually had a contract. 911iNet and Garcia were not parties to any contract with Plaintiff, and should be dismissed from the action under Federal Rule 12.

Specifically, in order for a claim against a corporate officer to survive a Rule 12(b)(6) motion, a plaintiff must allege (in addition to a corporation's infringing activity) that the individual corporate officer played an active role in the accused activity. Although an officer or director is not typically personally responsible for the corporation's acts, personal liability can in theory attach to the extent that there was active and knowing participation in the furtherance of a corporate tort. *Hoover Group Inc. v. Custom Metalcraft Inc.*, 84 F.3d 1408, 1412 (Fed. Cir. 1996).

In this case, however, the Complaint fails to state factual allegations to indicate what actions Defendant Garcia, the owner of Specialized, had taken in an individual capacity to harm the Plaintiff in any way. As such, the Complaint fails to state a claim against Mr. Garcia under which relief may be granted per Rule 12(b)(6).

Likewise, the Complaint fails to state factual allegations to indicate what actions Defendant 911iNet - a completely different business owned by Garcia - had taken to harm the Plaintiff in any way.  As such, the Complaint also fails to state a claim against 911iNet under which relief may be granted per Rule 12(b)(6).

## II. ARGUMENT
### A. STANDARD OF REVIEW

In reviewing the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. Fed. R. Civ. P. 12(b)(6); *Cortec Indus. v. Sum Holding*, 949 F.2d 42, 47 (2d Cir. 1991), cert, denied, 503 U.S. 960, 112 S.Ct. 1561 (1992); *Kramer v. Time Warner,* 937 F.2d 767, 773 (2d Cir. 1991); *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*., 748 F.2d 774 (2d Cir. 1984). A court may not consider any material other than the pleadings in determining a motion under Rule 12(b)(6) unless it converts the motion into a motion for summary judgment under Rule 56. However, material which is submitted as part of the complaint, as well as certain items in the record and public record, may be considered by the court.  James Wm. Moore, Moore's Federal Practice, § 12.07 [2.-5], at 12-89 (2d ed. 1995); see *Kopec v. Coughlin*, 922 F.2d 152, 155-56 (2d Cir. 1991); *Fonte v. Bd. of Mgrs of Continental Towers*, 848 F.2d 24, 25 (2d Cir. 1988).

Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of the plaintiff's allegations. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807 (1994). A complaint will not be dismissed unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the

relief requested. See *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02 (1957); see also *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *Greene v. WC'I Holdings Corp.*, 956 F.Supp. 509 (S.D.N.Y. 1997).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (holding that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" and citing to Fed. R. Civ. P. 10(c)). Where a plaintiff does not attach the exhibits to a complaint, but the complaint explicitly references them, such exhibits may be considered on a Rule 12(b)(6) motion. *Johns v. Town of East Hampton*, 942 F.Supp. 99, 104 (E.D.N.Y. 1996). Furthermore, it is well established that, when a plaintiff fails to introduce a pertinent document as part of his pleading, a defendant may introduce that exhibit as part of his motion attacking the pleading. See 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1327, at 762-63 (2d ed. 1990). Accordingly, the factual allegations of a Complaint, as supplemented by those documents referenced therein, are deemed true for purposes of a motion to dismiss. *2 Broadway LL.C. v. Credit Suisse First Boston Mortg. Capital LL.C.*, No. 00 Civ. 5773, 2001 WL 410074 (S.D.N.Y. 2001).

### B. THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO "PIERCE THE CORPORATE VEIL"

#### 1. Defendant Javier Garcia

Generally, one acting in his or her capacity as a corporate officer is protected from personal liability, as it is a basic tenet of corporate law that officers and directors may rely on the corporate status to protect personal assets from judgments. A plaintiff seeking to establish an

individual defendant's personal liability for a corporate act must "pierce the corporate veil." The rationale for piercing the corporate veil is typically that the corporation is something less than a bona fide independent entity. For example, factors considered when analyzing whether it is appropriate to pierce the corporate veil include whether the corporation in question is inadequately capitalized, whether the corporation is a mere alter ego of the individual defendant in question, whether the corporate form is being used to perpetrate a fraud or illegal act, or whether corporate formalities have not been properly complied with. *Minton v. Cavaney*, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961); *Zaist v. Olson*, 154 Conn. 563, 227 A.2d 552 (1967); *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E..2d 6 (1966); *Berkey v. Third Ave. Ry.*, 244 N.Y. 84, 155 N.E. 58 (1926).

In the present case, as outlined below, no such elements exist.

Specialized Location Services was a business that offered services for monitoring offenders for court ordered compliance, from 2010 to 2020. Javier Garcia was the CEO of such business. (Garcia Affidavit, Paragraph 2).

Plaintiff Supercom, Inc. is a manufacturer and distributor of electronic monitoring equipment for offenders. (Garcia Affidavit, Paragraph 3).

Specialized Location Services entered into a Reseller Agreement with Plaintiff dated June 4, 2019, wherein Specialized Location Services was to market Plaintiff's electronic monitoring products to certain territories. There were no other parties to the Reseller Agreement besides Plaintiff and Specialized Location Services. (Garcia Affidavit, Paragraph 4).

A payment dispute developed between the parties to the Reseller Agreement in March and April of 2020, resulting in Plaintiff claiming in this lawsuit that Plaintiff is owed a balance of $247,800.38, inclusive of interest at an aggressive interest rate. Plaintiff named "Specialty

Location Services" in this lawsuit, not Mr. Garcia's actual former business Specialized Location Services. To Mr. Garcia's knowledge, there has never been a business known as "Specialty Location Services." (Garcia Affidavit, Paragraph 5).

Mr. Garcia disputes the total balance asserted by Plaintiff. After the parties' relationship ended in the Spring of 2020, and after the Plaintiff took over Specialized Location Services' relevant customers, Plaintiff continued to invoice Specialized Location Services, unfairly padding the alleged balance due. (Garcia Affidavit, Paragraph 6).

Plaintiff also incorrectly argues that it is owed the value of the equipment at issue. However, it is Mr. Garcia's understanding that Plaintiff already collected the equipment in question in the process of taking over Defendants' customers. Therefore, Defendants owe Plaintiff nothing relative to the equipment. (Garcia Affidavit, Paragraph 7).

Individual Defendant Javier Garcia has now been named in the Amended Complaint improperly. (Garcia Affidavit, Paragraph 25).

However, Javier Garcia was not a party to any contract with the Plaintiff. (Garcia Affidavit, Paragraph 26).

Moreover, Javier Garcia was not a guarantor of any party's obligations under any contract with the Plaintiff. (Garcia Affidavit, Paragraph 27). Consistent with this, there is no evidence that Garcia benefitted from the agreement personally either.

Furthermore, contrary to the Plaintiff's assertion, there was no intermingling of assets and debts of Garcia's with those of the corporate Defendants. (Garcia Affidavit, Paragraph 28).

As such, Garcia was never the alter ego of Specialized Location Services, LLC. or 911iNet, LLC. (Garcia Affidavit, Paragraph 29).

Garcia never disregarded the company form for either company, and Garcia never acted as though either company's assets were his alone. (Garcia Affidavit, Paragraph 30).

The very purpose of incorporating is to protect individual owners from liability for *entirely corporate* debts. It is respectfully submitted that nothing so monumental occurred in this case as to render such traditional safeguards obsolete. According to all of the foregoing, the Amended Complaint against individual Defendant Garcia should be dismissed in its entirety.

### 2. Defendant 911inet, LLC

In *Trabucco v. Intesa Sanpaolo, S.p.A*, 695 F. Supp. 2d 98 (S.D.N.Y. 2010), the U.S. District Court for the Southern District of New York reasoned that "[u]nder New York Law, one corporation is considered to be mere alter ego when it "has been so dominated by . . . another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." . . . Then, the dominating corporation will be held liable for the actions of its subsidiary . . . Alter ego cases typically involve the determination of "which corporate parties may be cast in damages for the breach" of a contract. . . . In this analysis, control is the key. *Wm. Passalacqua Builders, Inc. v. Resnick Developers, Inc*., 933 F.2d 131, 138 (2d Cir. 1991). Courts will only "pierce the corporate veil" where there has been "complete control by the dominating party that leads to a wrong against third parties." Id. Facts relevant to the "complete control" inquiry are: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, . . . (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address, and telephone numbers of corporate entities, (6) the amount of business

discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Here, Defendant 911inet, LLC had <u>no</u> contract with the Plaintiff, <u>no</u> relationship with the Plaintiff, and, in fact, had <u>nothing</u> to do with the Plaintiff or this litigation. This can not be any more clear from the agreement itself. Therefore, Defendant 911inet, LLC does not owe Plaintiff any amount of money. (Garcia Affidavit, Paragraph 8).

Specialized Location Services – the signatory to the Agreement at issue - ceased all business operations some time ago.  Specialized Location Services has been out of business since 2020, and is now being formally dissolved as a limited liability company. (Garcia Affidavit, Paragraph 9).  Specialized Location Services has no real property, no funds, and no tangible assets of any kind. (Garcia Affidavit, Paragraph 10).

At the time they filed the Complaint, Plaintiff knew full well that Specialized Location Services was out of business, and they only included 911inet, LLC in the Complaint in an inappropriate effort to force a settlement payment because 911inet, LLC is owned by Javier Garcia. (Garcia Affidavit, Paragraph 11).

In an attempt to pull 911inet, LLC into this case, Plaintiff argues that Mr. Garcia failed to operate 911inet, LLC as a separate legal entity.  This is simply untrue, and Plaintiff clearly has no evidence to support this self-serving theory. Mr. Garcia always operated the two businesses separately. Otherwise, Mr. Garcia would have had just one business. Whereas Specialized Location Services was formed in 2010, 911iNet, LLC. was formed nine years later on December

6, 2019 in Russell County, Alabama, and was assigned Entity ID Number 000-596–111 by the Alabama Secretary of State. (Garcia Affidavit, Paragraph 12).

Plaintiff primarily relies on the fact that both businesses, Specialized Location Services and 911inet, LLC, were located at the same address. That, in itself, is not nearly enough to support Plaintiff's accusation, as it is common in the business world for a person to have multiple businesses with the same address. (Garcia Affidavit, Paragraph 13).

In addition, it is of zero consequence whether Mr. Garcia ever e-mailed Plaintiff from a 911inet, LLC address or otherwise listed such e-mail address somewhere out of convenience. Mr. Garcia could have just as easily sent a communication to Plaintiff from his own personal account, or from a friend's or relative's account. (Garcia Affidavit, Paragraph 14).

It also makes no difference that Mr. Garcia was listed as the registered agent for both businesses. (Garcia Affidavit, Paragraph 15).

Mr. Garcia does not, and has never referred to 911inet, LLC and Specialized Location Services interchangeably. It would make no sense to do so because the services of each company are completely different. The services of Specialized were the monitoring of criminal offenders for compliance with court orders. The services of 911iNet are as a 24-hour dispatch and two-way radio company. (Garcia Affidavit, Paragraph 16).

Specialized Location Services and 911inet are not alter egos of one another and never were. (Garcia Affidavit, Paragraph 17).

Specialized Location Services was not undercapitalized. (Garcia Affidavit, Paragraph 18).

There was no transferring of assets and debts freely between the corporate Defendants. (Garcia Affidavit, Paragraph 19).

Plaintiff's claim against 911inet, LLC is an inappropriate stretch that must be ignored. Holding a completely separate, unrelated entity like 911inet, LLC liable under these circumstances would set a highly troubling precedent. (Garcia Affidavit, Paragraph 20).

The fact of the matter is that there are many individuals that own more than one business. It would be illogical, terribly unfair, and thoroughly disruptive if <u>every</u> business owned by an individual was liable for the acts or omissions of every *other* business owned by the same individual *just because of such ownership*.

Plaintiff argued that the Agreement provided that "*Specialty"* Location Services was the full legal name of the entity that signed the Contract and that it was a company duly organized and validly existing under the laws of Alabama. Plaintiff argued that this was a misrepresentation because "*Specialty*" Location Services was not a duly organized company. (Garcia Affidavit, Paragraph 21).

However, the Agreement simply contained a typographical error. As outlined in Defendants' papers filed on November 12, 2021, the correct name of the entity in question was "<u>Specialized</u>" Location Services (not "*Specialty*"). (Garcia Affidavit, Paragraph 22).

<u>Specialized Location Services was, in fact, an authorized Domestic Corporation formed under the laws of the State of Alabama, with a formation date of December 29, 2010, Entity ID Number 000-266-119</u>. The Registered Agent was Javier Garcia, and the Registered Office Address was 2135 Interstate Drive, Suite 178, Opelika, Barbour County, AL 36801. The listed nature of the business was to "PROVIDE SECURITY/LOCATION/SUPPORT SERVICES." (Garcia Affidavit, Paragraph 23).

Therefore, Specialty Location Services was not a sham entity. (Garcia Affidavit, Paragraph 24). Specialized had not been set up to perpetrate frauds. It was founded in 2010 and did legitimate business for approximately ten years.

In sum, because Garcia and 911inet, LLC should each be removed from this case, and because Specialized Location Services no longer exists, this entire case should be dismissed. (Garcia Affidavit, Paragraph 31).

## IV. CONCLUSION

As outlined herein, no part of the Amended Complaint offers specific facts to justify "piercing the corporate veil" or to demonstrate Defendant Garcia's or Defendant 911iNet's direct involvement or specific intent to harm Plaintiff. Instead, Defendant Garcia's involvement is limited to his ownership of the corporation that stands accused of breaching a contract, and Defendant 911iNet's involvement is limited to being a second unrelated company owned by the same individual. Therefore, Defendants' Motion to Dismiss the Amended Complaint against them should be granted.

Dated: March 14, 2022　　　　　　　　Respectfully submitted,
　　　　　Calverton, New York

　　　　　　　　　　　　　　　　　　　/s/ Todd Wengrovsky
　　　　　　　　　　　　　　　　　　　Todd Wengrovsky - TW4823
　　　　　　　　　　　　　　　　　　　Law Offices of Todd Wengrovsky, PLLC.
　　　　　　　　　　　　　　　　　　　285 Southfield Road, Box 585
　　　　　　　　　　　　　　　　　　　Calverton, NY 11933
　　　　　　　　　　　　　　　　　　　Tel (631) 727-3400
　　　　　　　　　　　　　　　　　　　Fax (631) 727-3401
　　　　　　　　　　　　　　　　　　　*Attorney for Defendants*